# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| WILLIAM H. MUND and PAMELA J. MUND, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>EMCC, INC., a Delaware Corporation,<br><br>            Defendant. | Civil No. 08-936 (JRT/JJK)<br><br>**MEMORANDUM OPINION AND ORDER CERTIFYING CLASS** |

Mark H. Thieroff, Jordan M. Lewis, and Wood R. Foster, Jr., **SIEGEL BRILL GREUPNER DUFFY & FOSTER, PA**, 100 Washington Avenue South, Suite 1300, Minneapolis, MN 55401; Michael G. Phillips, **PHILLIPS LAW, P.L.L.C.**, 270 Grain Exchange Building North, 301 Fourth Avenue South, Minneapolis, MN 55415, for plaintiffs.

Thomas H. Schaefer, Leon R. Erstad, and Patrick D. Reilly, **ERSTAD & RIEMER, PA**, 8009 34th Avenue South, Suite 200, Minneapolis, MN 55425-4409, for defendant.

Defendant EMCC, Inc. ("EMCC") was hired to collect delinquent timeshare dues on behalf of the Royal Holiday Club, a worldwide network of timeshare properties. EMCC sent demands for payments to more than 1800 United States consumers. These demands all factored in "collection costs" equal to 35% of each consumer's total debt. Plaintiffs William and Pamela Mund received this letter and argue that this practice violates the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. §§ 1692, *et seq.* The Munds now seek certification of a class of consumers who also received the demand letter.

# BACKGROUND

In 1994, the Munds purchased a membership in the Royal Holiday Club Plan by entering into a contract with Holiday Clubs International, Ltd. ("HCI"), a California corporation. The Munds obtained credits redeemable at participating resorts, and agreed to pay an initial charge and an annual maintenance fee. The Munds agreement included the following provisions:

> In the event that any monies remain unpaid from the due date, a five percent collection fee may be added to the amount outstanding and thereafter interest on the balance outstanding may be charged at a rate of 2.5 percent per month, accumulating monthly until payment in full is made; provided that these rates do not violate any applicable law and if so the rate will be the maximum allowed by such applicable law.
>
> The Member shall fully and effectively indemnify the Club and the Management against all costs (including legal costs) incurred in connection with the recovery of any outstanding monies due from him.

(Second Thieroff Aff., Docket No. 28-2, Ex. 1, EMCC 0024.)

On April 13, 2007, EMCC sent the Munds a letter indicating that they owed $1989.98, an "amount comprised of principal, interest, collection costs and late fees, if applicable, as authorized by [the Munds'] agreement with [HCI]." (*Id*., Ex. 2.) The letter added that it should be considered "a demand for payment in full." (*Id*.) Later correspondence from EMCC indicated that the portion of this total attributed to "collection costs" amounted to $515.92, or exactly 35% of what the Munds allegedly owed. (*Id*., Ex. 3.) The Munds contend, and EMCC does not dispute, that this reflected EMCC's standard practice of adding "collection costs" of 35% to all of the debts that it collects from members of the Royal Holiday Club. EMCC indicates that this 35% figure

was determined in negotiations with HCI, and admits that it did not actually incur $515 in expenses in the course of collecting the Munds' debt. (Third Thieroff Aff., Docket No. 39, Ex. 12, at 26, 75.) The Munds allege that this letter therefore violated the FDCPA, because in their contract with HCI, they merely agreed to pay for collection costs that were actually incurred in the course of collection efforts.

The Munds allege that collection letters with virtually identical language were sent to approximately 1853 other members of the Royal Holiday Club.[1] While there are some differences in the underlying contracts between these consumers and HCI, the Munds contend that as to the question of whether the consumers agreed to pay collection costs that exceeded the actual costs of collection, the contracts are essentially the same.[2]

---

[1] The Munds add that approximately 292 of the consumers who received the letter made payments in response. (Second Thieroff Aff., Docket No. 28, ¶ 8.)

[2] The Munds provide the following examples of differing provisions that are effectively identical as to the question of the consumers' payment of collection fees:

> In the event that buyer is sent to a collection agency, specializing in overdue accounts, the buyer will pay the legal and collection fees of this service.
>
> ***
>
> In the event that buyer is sent to a collection agency, specializing in overdue accounts, the collection fees of this service will be paid by the buyer.
>
> ***
>
> In the event that this Promissory Note is sent to a collection agency, any collection fees shall be paid by the Subscriber(s).
>
> ***
>
> In the event that the buyer is sent to a collection agency, specializing in overdue accounts, the buyer will pay all fees.

(Footnote continued on next page.)

The Munds filed this action on April 2, 2008, alleging a single claim under the FDCPA, and seeking certification of a class of consumers who entered into contracts with HCI and then received collection requests demanding payment of a 35% "collection fee."

**ANALYSIS**

**I. FDCPA**

Under the FDCPA, it is unlawful for a debt collector to attempt to collect "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). In addition, the Eighth Circuit has specifically held that it violates the FDCPA for a debt collector to add collection fees to a debt based on a percentage – rather than actual collection costs – when the debtor's agreement with the creditor merely provides that the debtor is responsible for "actual costs" of collection. *See Kojetin v. C U Recovery, Inc.*, 212 F.3d 1318, 1318 (8th Cir. 2000). The Munds allege that EMCC has violated that principle here.

**II. CLASS CERTIFICATION**

    **A. Rule 23(a)**

For class certification under Rule 23 of the Federal Rules of Civil Procedure, a representative must show "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or

---
(Footnote continued.)

(Second Thieroff Aff., Docket No. 28-2, Ex. 7, EMCC 0601, 0605; Ex. 8, EMCC 0667; Ex. 9, 0685.)

defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Under this Rule, "district courts have broad discretion to determine whether class certification is appropriate." *Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 260 (D. Minn. 2001) (internal quotation marks omitted).

### 1. Numerosity

The Munds allege that the offending letter was sent to more than 1853 consumers. EMCC does not dispute that this satisfies the numerosity requirement, and this Court agrees that joinder of this number of consumers would be impracticable.

### 2. Commonality & Typicality

"As a general rule, the commonality requirement imposes a very light burden on a plaintiff seeking to certify a class and is easily satisfied." *Sonmore*, 206 F.R.D. at 261 (internal quotation marks omitted). "The rule does not require that every question of law or fact be common to every member of the class, and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.* (internal quotation marks omitted). The typicality requirement requires "that there are other members of the class who have the same or similar grievances as the plaintiff." *Id.* at 262 (internal quotation marks omitted). "The burden is fairly easily met so long as other class members have claims similar to the named plaintiff. Factual variations in the individual claims will not normally preclude class certification if the claim arises from

the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The parties' arguments on the commonality and typicality requirements overlap, and are therefore dealt with jointly below.

The Munds argue that the commonality and typicality requirements are satisfied here because the class members were all sent virtually identical demand letters instructing them to pay collection costs that they did not agree to pay. EMCC responds that the amount of "collection costs" that were appropriate will vary by individual, because that determination depends on the specific language of each individual contract. EMCC also notes that § 1692(f)(1) does not prohibit charges that are "permitted by law," and broadly suggests that some of the class members may reside in states where state law allows the disputed collection costs. Finally, EMCC argues that the class members may have suffered different damages, particularly in light of the fact that some consumers made payments in response to its demand letters while others did not.

As to the first issue raised by EMCC, the Court fails to find any differences in the class members' contracts that are relevant to whether they agreed to pay **all** of the costs associated with a referral to a collection agency – including a one-size-fits-all, 35% collection fee – or whether they merely agreed to pay for the **actual** costs incurred during collection efforts. Rather, each of the contractual provisions quoted above generically commits the consumer to pay for collection costs, and thus each contract presents a common legal question of whether a consumer whose made a general commitment of that sort – without modifiers specifically indicating that the consumer is merely required to

pay for "actual" collection costs – is obligated to pay the type of one-size-fits-all collection fee imposed here. In the Court's view, that type of common question of whether particular contractual language imposes limits enforceable under the FDCPA is well-suited for class-wide treatment.

As to EMCC's second argument, EMCC merely points to two Minnesota statutes that are irrelevant to the FDCPA issues discussed above. First, EMCC points to Minnesota Statutes section 604.113, which establishes civil penalties for issuing a worthless check. It is conceivable that this provision, or other similar provisions, will affect the specific dollar amounts owed by particular consumers. In other words, the consumers' debts may vary. However, this is a separate matter from the question of whether the consumers agreed to pay the disputed collection costs. As the Court explains in greater depth below, if the class members merely agreed to pay collection expenses that were actually incurred, and if EMCC's letter therefore caused an injury under the FDCPA, that injury will be sufficiently similar to satisfy the commonality and typicality requirements even if the extent of the monetary damages suffered by individual class members varies. *See Mann v. Acclaim Fin. Servs., Inc.*, 232 F.R.D. 278, 284-85 (S.D. Ohio 2003) ("While the extent of a class member's particular injuries [under the FDCPA] may differ, because they all received communications containing the same language, the type of injury will generally be the same.") Second, EMCC generally points to the chapter of Minnesota's statutes governing mortgage foreclosures. However, EMCC does not explain, and this Court fails to see, how Minnesota's mortgage statues impact the class members' contracts for timeshare credits.

As to EMCC's third argument, EMCC is correct that the Munds are merely entitled to recover statutory damages, while other class members who actually made payments in response to EMCC's demand letters may also be entitled to recover actual damages. There is nothing in either the FDCPA itself or prior case law, however, that requires that a lead plaintiff in an FDCPA case have an identical damage claim to all of the putative class members. As another court in this district explained in *Egge v. Healthspan Services Co.*, 208 F.R.D. 265, 270 (D. Minn. 2002), another FDCPA case, "[a] class representative can represent a class whether or not he suffers actual damages, as long as the class members' injuries arose out of the same violative conduct." *See also Keele v. Wexler*, 149 F.3d 589, 593-94 (7th Cir. 1998) (finding that an FDCPA plaintiff could maintain a class action on behalf of plaintiffs who may or may not have suffered actual damages even though the plaintiff had not suffered actual damages herself). Here, the class members' claims arise out of materially identical contract provisions, and present identical legal questions under the FDCPA. While their damage claims will likely differ, there are no indications that those differences in delinquent timeshare dues are exponential, or that they otherwise override the advantages of resolving the common, disputed contract question in a common proceeding.[3] In sum, the Munds present a

---

[3] Moreover, to the extent that EMCC is concerned with preserving the rights of absent class members to pursue their larger claims in a manner of their choosing:

> [T]his assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing

(Footnote continued on next page.)

question of contract interpretation that is common to all of the class members, and sufficient to establish commonality and typicality.

### 3. Adequacy of the Representatives

"The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Sonmore*, 206 F.R.D. at 263. EMCC argues that the Munds cannot meet this standard, relying on an assessment of an FDCPA class action in *Sonmore*. In that case, the court found that the plaintiffs alleging FDCPA claims were not adequate class representatives, in part because they would not personally obtain any greater benefits in a class action than if they pursued their claims individually. *Id*. at 263. EMCC argues that this same reasoning applies here as well, and that this Court should therefore follow *Sonmore* in denying class certification. The Court disagrees.

In *Sonmore*, the court had already concluded in an earlier summary judgment ruling that the letters sent to the named plaintiffs violated the FDCPA. *Id*. In other words, it appeared as if the named plaintiffs were at a point in the litigation where they could essentially stop and collect a judgment. The Court reasonably concluded that this

___
(Footnote continued.)

> whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). In addition, class members desiring to proceed individually are entitled to an opportunity to opt out of the class. *See* Fed. R. Civ. P. 23(c)(2)(B)(v).

raised a question as to whether the plaintiffs were appropriately situated to vigorously pursue the interests of the absent class members. Here, however, this Court has made no such ruling on the disputed letters, and further steps in litigation would be critical to both the claims of the putative class members and the claims of the Munds themselves. In those circumstances, *Sonmore* is not an obstacle to certification. Accordingly, the Court concludes that the Munds have satisfied the adequacy of representation requirement as well.[4]

**B.     Rule 23(b)**

Plaintiffs seeking class certification also must satisfy one of the prongs listed under Rule 23(b). The Munds argue that they satisfy Rule 23(b)(3), which applies where "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**1.     Predominance**

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The requirement is satisfied "when there exists generalized evidence which

---

[4] EMCC also generally argues that the Munds did not appear to have extensive knowledge of this case when questioned at their depositions. In light of the relatively limited scope of this lawsuit, however, there is no special need for them to understand the finer details of their contract. In short, the central dispute in this case is over the disputed contract language governing consumers' responsibility for collection fees, and the Munds clearly indicate that they agreed to such a provision.

proves or disproves an element on a simultaneous, class-wide basis, since proof obviates the need to examine each class member's individual position." *Sonmore*, 206 F.R.D. at 264 (internal quotation marks omitted). "The existence of individual questions, such as damages, does not necessarily preclude satisfaction of Rule 23(b)(3)'s predominance requirement." *Id*.

In addressing this prong, EMCC merely indicates that its arguments challenging the commonality and typicality requirements apply to the predominance requirement as well. For the reasons given above, the Court finds nothing in those arguments that poses a problem for certification. In short, the Munds have offered materially identical contract language that raises a common legal question under the FDCPA. Again, while there are certain to be differences in the damages suffered by individual class members, nothing in the record suggests that those differences in unpaid timeshare dues are exponential, or that they otherwise outweigh the value that class members will derive from a common adjudication of the underlying contract issue. Accordingly, the Court finds that the predominance requirement is satisfied.

### 2. Superiority

"There is no bedrock standard upon which a Court determines that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Sonmore*, 206 F.R.D. at 265 (internal quotation marks omitted). Rather, courts generally look to the following non-exhaustive list of relevant factors: (1) the interest of class members in individually controlling the prosecution of their claims;

(2) the extent of any litigation that has already begun; (3) the desirability of concentrating the litigation in a particular forum; and (4) the likely difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, EMCC argues that class treatment is inappropriate because it has negative net worth, and any recovery is likely to be limited. The Munds respond that EMCC's financial position is not as dire as it suggests. Specifically, the Munds contend that EMCC receives money to purchase debts through a parent corporation, that its obligation to repay those debts is not "real," and that EMCC's true net worth is actually more than $11 million.

EMCC is correct that if it does indeed have a negative net worth, there may be a substantial question over whether an 1800-consumer class action is appropriate in this case, particularly in light of the explicit tie between an FDCPA defendant's net worth and the statutory damages available to unnamed class members. *See* 15 U.S.C. § 1692k(a)(2)(B); *see also Kohlenbrener v. Dickinson*, No. 94-C-4696, 1996 WL 131736, at *2-3 (N.D. Ill. Mar. 15, 1996) (denying class certification where a FDCPA defendant had a negative net worth). However, EMCC's balance sheet shows nearly $20 million in liabilities to EMCC's "affiliates," and EMCC does not dispute the Munds' assertion that this liability is primarily owed to an entity named "EMCC Ohio." (*See* Third Thieroff Aff., Docket No. 28, Ex. 20.) Both EMCC and EMCC Ohio appear to be subsidiaries of EMCC Holdings, Inc. ("EMCC Holdings"). (*Id.*) When asked to explain what EMCC Ohio is, EMCC's CEO indicated that he had "[n]o idea" what kind of entity it is, that it

has no assets or operations, and that it was "probably" simply an "accounting entity."[5] (*Id*., Ex. 15, at 73-75.) In sum, there are substantial questions about EMCC's true net worth, and about whether the threat of consumer protection actions in the debt collection context has colored a parent corporation's handling of its subsidiaries. In those circumstances, in a case where the plaintiffs have otherwise met the standards for class certification, this Court concludes that the appropriate course is to certify the class, and address any outstanding issues related to EMCC's net worth either at a phase of this case when damages are determined, or when information emerges clearly demonstrating EMCC's true worth and its impact on the wisdom of class-wide proceedings.[6]

## CONCLUSION

In sum, the circumstances surrounding each class member's alleged injury are nearly identical and raise the same legal question under the FDCPA. In those circumstances, the Court finds that common issues predominate over any individualized issues that may arise, and that certification is appropriate. The class definition sought in the Munds' complaint is "[e]very consumer from whom EMCC, Inc., on or after April 2, 2007, has sought to collect, or actually collected, a collection fee in the absence of an agreement by the consumer to pay the fee." (Compl., Docket No. 1, ¶ 21.) The Court

---

[5] In addition, as the Munds note, on April 12, 2006, EMCC settled another FDCPA action and admitted a net worth of $900,000. (Third Thieroff Aff., Docket No. 39, Ex. 21, at 2.)

[6] EMCC also briefly argues that difficulties in locating class members make this case a poor fit for class certification. As the Munds note, however, the class members are all class members by virtue of having received a letter from EMCC. In those circumstances, this Court envisions relatively minimal difficulties in providing notice in this case.

adopts that definition, with the additional constraint that the class members must have entered into contracts containing one of the provisions governing collection fees quoted above. The Court hereby finds and concludes pursuant to Rule 23 that lead plaintiffs William H. Mund and Pamela J. Mund are adequate class representatives and certifies them as representatives for the class. The Court further finds and concludes pursuant to Rule 23(g) that the law firm of Siegel, Brill, Greupner, Duffy & Foster and the law office of Phillips Law will fairly and adequately represent the interests of the class and appoints them as lead counsel.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Munds' Motion for Class Certification [Docket. No. 25] is **GRANTED** as set forth above.

DATED: July 27, 2009                        ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                                  United States District Judge